Pauline **CHRISTOFELY**, individually and as Limited Executrix of the Estate of Peter Christofely, deceased, Mercina S. Martinez, and Denise McKenna, Plaintiffs,

v.

**FEDERAL INSURANCE ADMINISTRATION, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**, Federal Emergency Management Agency, Federal Crime Insurance and The United States of America, Defendants.

**No. CV 80–3400.**

United States District Court, E.D. New York.

Feb. 7, 1984.

to Cummings.

Solomon R. Agar, Staten Island, N.Y., for plaintiffs.

Raymond J. Dearie, U.S. Atty. by Igou M. Allbray, Asst. U.S. Atty., Brooklyn, N.Y., for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiffs [1] bring this action for payment under three residential insurance policies issued under the Federal Crime Insurance Program. Plaintiffs filed claims for losses suffered in a December 13, 1978 burglary of their adjoining dwellings. Payment on the policies was refused after investigations suggested there were elements of fraud in the claims.

Defendants now move for summary judgment pursuant to Rule 56(b), Fed.R. Civ.P. They allege that the required notice to the local police was not made by plaintiffs Martinez and McKenna and a signed statement of proof of loss was not filed within sixty days by any of the plaintiffs. These omissions, they contend, bar plaintiffs' recovery in this action. Defendants also argue that the Director of the Federal Emergency Management Agency (FEMA) is the only proper party defendant and the action should be dismissed as to all other party defendants pursuant to Rule 12(b)(1), Fed.R.Civ.P.

The issues before this Court are whether failure to file a proof of loss statement within sixty days bars plaintiffs from recovery in this action, whether failure to notify the police bars recovery, and who are the proper defendants in this case.

1. Plaintiff Peter Christofely died after commencement of this action and his wife, Pauline Chistofoley, was appointed Limited Administratrix by the Richmond County Surrogate's Court on March 16, 1983. Plaintiff Mercina Martinez is the daughter of Peter and Pauline Christofely. Plaintiff Denise McKenna is Ms. Martinez's daughter and the Christofelys' granddaughter.

At the time of the burglary the Christofelys lived on the first floor of 15 Windom Avenue, Staten Island, New York, and plaintiffs Martinez and McKenna occupied a separate basement apartment at the same address. While the dwellings had separate entries, they were connected by a stairway and hallway closed off by locked doors.

## I.

In support of their motion defendants present a copy of the police report ("UF61"), three sworn proof of loss statements[2] and a number of other exhibits, including investigators' reports and documentation submitted in support of plaintiffs' claims of property loss. At the outset the Court would note that all this information has been in the government's possession since 1979. This action was over three years old and had been scheduled for trial at least once before when this summary judgment motion was brought.

In opposition plaintiffs Martinez and Christofely have submitted supporting affidavits to the effect that it was Ms. Martinez who reported the double burglary to the police with the implication that if the police failed to note the dual burglary on the UF61 it was an oversight in their report procedures and not in the plaintiffs' actions. Ms. Martinez is named as the person reporting the burglary on the UF61. In further controversion of the defendants' motion plaintiffs have submitted affidavits stating that notice of the burglary and loss was given to their policy agent, Norman Heil, in person at his office on December 14, 1978. Forms, bearing Mr. Heil's signature and dated December 14, 1978, with an attached lost property list note the report of the loss. The defendants now insist that this is insufficient, that there must be a

signed, sworn, detailed proof of loss statement. On the other hand, plaintiffs affirm that at the time of the first report Mr. Heil told them no papers need yet be signed and instead investigators would be visiting them shortly.[3] It is not clear, but it would appear that plaintiffs were not timely apprised of the need for nor supplied with the forms for a formal proof of loss statement before March 20, 1979. Nevertheless, by mid-February 1979 investigators had interviewed the claimants, collected supporting documents, and were making detailed inquiries about the claimed jewelry losses. A further reading of the defendants' exhibits reveals that around September 1979 the investigators' reports and recommendations were complete. According to plaintiffs, tentative settlement offers had been made to them separately and had been variously accepted or rejected. In December 1979 it was determined to deny plaintiffs' claims because of "failure to establish ownership." (Defendants' Exhibit I).

## II.

In passing the Court notes that interpretation of the specific contract of insurance is not possible here. An examination of the court file in this case shows no copy of the insurance policy and none has been submitted with the other exhibits for this motion. It would appear that the Condition No. 4[4] is a standard notice clause in

---

**2.** The proof of loss statement sworn to by Ms. Martinez is dated March 20, 1979 and claims about $12,500 in lost property (Defendants' Exhibit F–1). Ms. McKenna's proof of loss statement is dated March 20, 1979 and claims about $12,000 in losses (Defendants' Exhibit G–1). The Christofelys' proof of loss statement is dated March 23, 1979 and claims about $10,000 in losses (Defendants' Exhibit E–1).

**3.** While the defendants characterize Norman Heil as an insurance broker, plaintiffs assert that he acted in the role of agent for the defendants in processing the plaintiffs' insurance claims. Private adjustors were engaged to investigate the claims as agents of FEMA and its servicing company, the Federal Crime Insurance Program. Reliable Claims Service, Inc. and John J. Riddle Claims Consultants, Inc. investigated the Christofely claim; Riddle and L. Bitkower Co., Inc. investigated the Martinez claim; and Riddle handled the McKenna claim.

**4.** As reproduced in End Note 1 of the Memorandum of Law in Support of Defendants' Motion for Summary Judgment, condition No. 4 provides in part:

CONDITIONS

4. *Insured's duties when loss occurs.* Upon knowledge of loss or of an occurrence which may give rise to a claim for loss, the insured shall (a) give notice thereof as soon as practicable to law enforcement authorities and to the insurer through any of its authorized agents, and (b) file detailed proof of loss, duly sworn to, with the Insurer through its authorized agents within sixty (60) days after the discovery of loss.

The policy further provides:

8. *Action against insurer.* No action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy
. . . .

FEMA program policies. Likewise, case law interpreting this policy condition in a variety of federally sponsored insurance programs is applied interchangeably. *See Nyasco Sports, Inc. v. Director, Federal Emergency Management Agency*, 561 F.Supp. 864 (S.D.N.Y.1983).

■ Among the many cases addressing the issue of filing proof of loss within sixty days this Court has found the recent opinion of Chief Judge Eisele in *Dempsey v. Director, Federal Emergency Management Agency*, 549 F.Supp. 1334 (E.D.Ark. 1982), particularly instructive and persuasive. There, after discussing the case law on the issue and noting its unsettled state, Chief Judge Eisele concluded that given the particular facts in *Dempsey* the reasoning in *Meister Brothers, Inc. v. Macy (Director, Federal Emergency Management Agency)*, 674 F.2d 1174 (7th Cir. 1982), by the Court of Appeals in a markedly similar set of circumstances was highly persuasive. In *Meister Brothers* the plaintiff had suffered loss and damage from a flood. He gave notice of the loss and the claim investigator inspected the site within a day or so. Continued inspections, reports, payment negotiations and a salvage sale followed over the next six months, but a proof of loss form was not executed until several months after the sixty day deadline. At that point partial payment on the claim had been made. When the plaintiff filed suit for the remaining unpaid damage claims the defendant asserted that the failure to file the sworn proof of loss statement within sixty days barred recovery. The Court of Appeals refused to hold the government agency estopped from raising the bar to recovery. Nevertheless, the Court held that under the particular facts of the case the government would not be heard to "belatedly ... assert a technical defense to a law suit which admittedly, if it had been in a state court against a private insurance carrier, would not have prevailed." 674 F.2d at 1177. Underpinning

the Court's holding was the fact that the government agency possessed all the information from the investigator's reports that it would have had had a proof of loss statement been filed. 674 F.2d at 1176. In reaching its holding the Court also observed that "[t]he Agency was not in any sense acting in a sovereign capacity here but was engaged in essentially a private business[,]" and had acted in a manner over a long period of time that contradicted any claim that recovery was barred on a technical policy condition. 674 F.2d at 1177.

In following *Meister Brothers*, Chief Judge Eisele in *Dempsey* relied heavily on the almost complete identity of facts between the cases. While the element of partial payment was absent from *Dempsey*, the Court found that the same pattern of immediate notice of the loss, followed by investigation, calculation of settlement amount, and somewhat belated execution of the proof of loss form, supported a denial of FEMA's summary judgment motion on the issue of the filing of a proof of loss statement within sixty days. In so holding, Chief Judge Eisele discussed estoppel against a government agency, and the legislative purpose of the federal insurance program. Noting in particular the agency's failure to raise the issue until initiation of the suit, the Court pointed out that the purpose of the proof of loss requirement was to allow the agency the fullest opportunity to investigate, defend and intelligently estimate rights and liabilities. 549 F.Supp. at 1340 (citing *Brennan v. FEMA*, 1981 Fire & Casualty Cas. 841 (D.Mass.1981)). In *Dempsey*, as in *Meister Brothers*, the substance and purpose of the proof of loss requirement had been fulfilled by the investigations carried out soon after the claimed loss. The Court concluded that the purpose of the proof of loss requirement would not be weakened and the purpose of the insurance program and public interest would be served by holding for the

Memorandum of Law in Support of Defendants' Motion for Summary Judgment, pg. 4.

Currently, the terms of the Federal Crime Insurance Program policy are codified at 44 C.F.R. Section 83.5.

plaintiff under the limited facts of that case. *Id.*

Similarly, the case at hand duplicates the facts in *Meister Brothers* and *Dempsey*. Plaintiffs gave notice of the burglary immediately and within the sixty days thereafter itemization of the lost property and supporting claim documentation were in the investigators' possession and detailed claim investigation begun. Apparently it was not until some doubt arose as to the claimed value of the property loss that plaintiffs were asked to and executed the proof of loss form. This was on March 20, 1979, some five weeks after the sixty day deadline. Investigation continued and payment offers were calculated and negotiated until the end of 1979 when the claims were finally refused. This action was commenced soon after. It was not, however, until more than three years later that the government very belatedly raised the technical recovery bar at issue here.

Finding the reasoning in *Meister Brothers* and *Dempsey* persuasive and the case at hand squarely within the narrow factual limits of those cases, this Court holds that under these particular facts plaintiffs' failure to file the required proof of loss statement forms within sixty days does not bar recovery on their civil action.

### III.

█ As to the issue of the police report requirement, there appears to be a factual dispute as to whether or not the burglary of the Martinez-McKenna dwelling was reported to the police along with the Christofely burglary. Although defendants have submitted the police complaint report, or UF61, showing only Peter Christofely as the burglary victim, plaintiffs have disputed the accuracy of the report in their affidavits. And the notation on the UF61 of Ms. Martinez as the reporting witness might lend support to plaintiffs' assertions that she reported the crime as to her own dwelling. If the purpose of the police report requirement is to assure an opportunity for police investigation leading to recovery of the property, that was achieved here, to the extent the police acted on the report. If the purpose of the requirement is to gather, preserve, and detail evidence, this the police failed to do on the face of the UF61. But it is a failure that cannot be attributed to the plaintiffs.

In order for a court to grant summary judgment there must be no genuine dispute as to a material fact. Rule 56(c), Fed.R. Civ.P. Ambiguities may be present and inferences can be drawn from the facts, but they must be viewed in a light most favorable to the party opposing the summary judgment motion. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Nevertheless, it is not for a court to weigh credibility or resolve issues of fact at the summary judgment stage. *Lignos v. United States*, 439 F.2d 1365, 1369 (2d Cir.1971). Here, there is a question of fact as to whether the burglary of the Martinez-McKenna dwelling was reported and the accuracy of the police report is disputed. Viewing the very sketchy UF61 in a light most favorable to the plaintiffs, the use of Ms. Martinez as the report complainant and the incompleteness of the report's information would lead this Court to infer omissions on the part of the police rather than by the plaintiffs. The Court, therefore, finds that a grant of summary judgment is not proper on the ground of failure to satisfy the police notification requirement.

### IV.

Finally, the Court turns to the motion by defendants to dismiss this action as to all the named defendants except the Director of FEMA pursuant to Rule 12(b)(1), Fed.R. Civ.P. Defendants contend that under Executive Order No. 12,127, *reprinted in* [1979] U.S.Code Cong. & Admin.News 3290–91, the Director of FEMA is the only proper party defendant. Plaintiffs have conceded this point in their memorandum. Therefore, this action is dismissed as to all named defendants except the Director of FEMA.

## V.

Accordingly, the defendants' motion for summary judgment against the plaintiffs pursuant to Rule 56(b), Fed.R.Civ.P., is denied on both the grounds presented. Defendants' motion to dismiss as to the Federal Insurance Administration, the Department of Housing and Urban Development, the Federal Crime Insurance Program, and the United States of America is granted, and it is hereby

ORDERED, that this action be dismissed as to all named defendants save the Director, Federal Emergency Management Agency, who shall be retained as the sole defendant.

SO ORDERED.